UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOSEPH SAETTA,                                             24 Civ. 1785 (NSR)

                     Plaintiff,                          **AFFIRMATION
                                                           IN OPPOSITION TO**
  -against-                                               **COUNTY DEFENDANTS'
                                                           MOTION TO DISMISS**

TERRANCE RAYNOR, Acting Commissioner-Sheriff,
GEORGE LATIMER, Westchester County Executive,
the WESTCHESTER COUNTY DEPARTMENT of
PUBLIC SAFETY, WESTCHESTER COUNTY, and
CORINNE PASCARIU-COSTO,

                     Defendants.
------------------------------------------------------------------------x

      PETER E. BRILL, ESQ., an attorney duly admitted to practice before the Courts of the State of New York, declares under penalty of perjury pursuant to 28 U.S.C. § 1746, that:

      I am a member of the law firm BRILL LEGAL GROUP, P.C., the attorneys for Plaintiff, JOSEPH SAETTA, and as such am fully familiar with the facts and circumstances as set forth herein.

      This affirmation is submitted in opposition to the June 27, 2024 Motion to Dismiss submitted by the "County Defendants" represented by the Westchester County Attorney.

      Initially, and as the Court can surely gather on its own, the County Defendants' hyperbolic assertion in their Preliminary Statement that Police Officer Saetta was operating under the belief that "he should be allowed to ticket anyone for any reason and not suffer any consequences for unprofessional and rude behavior" was never stated in Plaintiff's papers and has never been Plaintiff's position.

1

As Defendants' attempt to summarize Plaintiff's allegations somewhat fails to capture the essence of his claims, Plaintiff's position is as follows: While working as a probationary police officer, he was sent out on patrol supervised by an uncertified and unqualified Field Training Officer (P.O. Mohammed Chandoo) who stayed in the car when Officer Saetta conducted a traffic stop. Officer Saetta had both reasonable suspicion to stop Ms. Pascariu-Costo and probable cause to issue her multiple traffic summonses. Following an uneventful traffic stop, and after conferring with Officer Chandoo, he did so. It was only after Ms. Pascariu-Costo complained that she had received a summons despite showing a PBA card that Officer Saetta was warned that he was on thin ice and, when he started to make a stink about it both within and outside the Westchester County DPS, he was told he had failed his probation and lost his job. In an unprompted effort to placate him and to cover up his actions following Saetta's dismissal (despite the assertion in footnote 8 of the motion), Acting Commissioner Raynor provided Officer Saetta with a letter stating his dismissal was not a "removal for cause" nor a "removal during a probationary period" despite clear evidence to the contrary.

**Plaintiff Has Sufficiently Pleaded His Section 1983 First Amendment Claim**

Initially, Defendants improperly confuse the nature of Plaintiff's employment and the subject of his speech that is at issue here. Defendants well know that the speech which is the subject of this action is not the issuance of the traffic summons—*it is the speech that followed Defendants' reaction to Plaintiff issuing the traffic summons*. Plaintiff clearly alleges that he was not merely complaining about workplace conditions, issues or hazards. He was not complaining simply about how his supervisors were treating him, or even simply about the disciplinary action that was being taken against him (despite Defendants' later denial that any disciplinary action had been taken).

2

As the complaint makes clear, Plaintiff had a much broader awakening following what happened to him. He realized that he was working in a two-tiered justice system that favored certain classes of people over others and he communicated those views to co-workers, friends, family members, and government employees who worked in Westchester County government. Certain people were privileged in Westchester County and others were not, and Acting Commissioner Raynor had his thumb on the scale.

These issues were and remain matters of public interest and concern—after his termination Officer Saetta's story was covered by multiple newspapers, television stations and online publications throughout the region, specifically citing to the abuse of PBA cards in this context.[1] While his termination certainly affected him and his family personally, the issues he complained about are of great importance to the fair administration of justice in Westchester County and New York State.

As such, Defendants' reliance on *Montero v. City of Yonkers* is misplaced. *Montero*, 890 F.3d 386, (2d Cir. 2018). As the Second Circuit stated there, referring to *Garcetti v. Ceballos*, 547 U.S. 410 (2006), *Lane v. Franks*, 573 U.S. 228 (2014) and *Matthews v. City of New York*, 779 F.3d 167 (2015), "The 'critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.' *Lane*, 134 S.Ct. at 2379. Montero made his remarks as union vice president, a role in which he was not

---

[1] See, e.g., https://nypost.com/2024/03/14/us-news/ny-cop-claims-he-was-fired-for-writing-traffic-ticket-to-lawyer-who-flashed-pba-card-to-try-dodge-trouble/ ;
https://www.lohud.com/story/news/local/westchester/2024/03/18/westchester-county-ny-cop-claims-ouster-was-over-pba-card-favoritism/73016179007/ ;
https://abc7ny.com/police-lawsuit-westchester-county-new-york-ny/14529086/ ;
https://www.nydailynews.com/2024/03/13/rookie-westchester-cop-says-he-was-fired-for-ticketing-lawyer-who-had-pba-courtesy-card/ ;
https://www.theyonkersledger.com/news/police-officer-sues-over-wrongful-termination-alleges-punishment-for-ticketing-pba-card-holder/41574/

required to serve. See *Matthews*, 779 F.3d at 174 (concluding that the plaintiff's speech was not part of his official duties where it 'was neither part of his job description nor part of the practical reality of his everyday work')." As here, Police Officer Matthews was criticizing a police department policy and was found to be engaged in protected speech. Here, Police Officer Saetta's speech should be protected as well when he was criticizing a police department policy for which he had no responsibility or policymaking authority.

Defendants also misapprehend the timing of when Plaintiff's First Amendment injuries began to accrue. *See* Motion footnote 9. Plaintiff was on notice that he was subject to disciplinary action up to and including failure of probation and termination from his position as of December 19, 2023, 13 days after the traffic stop, but the desk officer had informed Officer Saetta about the complaint and Officer Chandoo had spoken with Saetta as well long before that. The December 19 meeting did not happen in a vacuum; Officer Saetta was well aware of the possibility of disciplinary action well before December 19. Even so, the conversations he engaged in occurred throughout December, January and thereafter. There is a direct causal connection between Plaintiff's speech to public figures and his ultimate termination, including Plaintiff's friend and City of Yonkers union official Brandon Neider, who spoke to Westchester County Legislator James Nolan, who then spoke to Acting Commissioner Raynor directly. After these and other public inquiries and statements questioning Westchester DPS's unlawful policies were made known to Commissioner Raynor, Plaintiff was terminated.

The County Defendants' claim that Saetta was disciplined for issues unrelated to his exercising his discretion to write a ticket despite being shown an alleged PBA card is not only absurd but irrelevant at this stage of the litigation. Plaintiff alleges in the Complaint that the basis

4

for his termination was his violation of the County Defendants' *de facto* policy of not issuing traffic tickets to motorists presenting its officers with PBA cards.

### **Plaintiff Has Sufficiently Pleaded *Monell* Liability**

Contrary to assertions by the County Defendants, *Monell* claims need not cite to an officially enacted or formal policy officially endorsed by County Defendants. Quoting from one of the cases cited by Defendants, *Grand Medford v. Brookhaven*, 22-cv-7834 (ARR)(ARL), 2024 U.S. Dist. LEXIS 8708, *43-46 (E.D.N.Y. January 17, 2024), "Even if there is not an explicitly adopted official policy, a plaintiff may establish that such a policy or custom exists by alleging 'practices so persistent and widespread [that they] practically have the force of law,'; if, however, a pleading articulates 'only isolated instances of unconstitutional behavior,' a plaintiff will not have plausibly alleged municipal liability, *Douglas v. City of Peekskill*, No. 21-CV-10644 (KMK), 2023 WL 2632217, at *9 (S.D.N.Y. March 24, 2023)... For the acts of a policymaker to constitute an official policy, the plaintiff must allege that the policymaker has 'final authority to establish municipal policy with respect to the action ordered.' *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (quoting *Pembaur v. City of Cinicinnati*, 475 U.S. 469, 481 (1986) (plurality op.)).

Acting Commissioner Raynor was the policymaker with the final authority to determine who did and did not get traffic summonses issued by the Westchester County Police Department. As such, under his command, he established the municipal policy of the Westchester County Police Department that officers who issued summonses to motorists who possessed PBA cards would be subject to disciplinary action. Of course, this policy was not put down in writing. However, based upon information provided to Plaintiff and members of the press by multiple sources within the Westchester County Police Department, there is a pattern of disciplinary action being taken against Westchester County Police Officers aside from Saetta who have written traffic summonses to motorists with PBA cards. The only difference between those officers and Saetta is that those

5

officers were not probationary and could not be as easily terminated as Saetta. While the County Defendants will no doubt deny that the disciplinary action in question was for that purpose (and no doubt it will be written down as being pretextually for something else), there are current and former Officers who will attest to the truth.

As such, the unwritten *de facto* policy of the Westchester County Department of Public Safety was that motorists who presented PBA cards to Westchester County Police Officers following traffic stops did not receive traffic tickets. This policy was pervasive and well known to the point that those violating the policy were punished. As Acting Commissioner, Raynor was the individual responsible for imposing discipline within his Department as well.

The Complaint is far from silent as to the injury Plaintiff suffered as to the County Defendants' official policy. Indeed, it is the entire basis of the complaint, and is summarized at the top of page two, above. To briefly expand on that, however, Plaintiff has applied to dozens of law enforcement agencies since his termination. Despite the letter provided to him by Defendants, he has been unable to secure employment as a police officer. On at least one occasion, a prospective employer told Plaintiff that Westchester DPS was actively tarnishing his name.

Should the Court determine that *Monell* liability has not been sufficiently alleged in the current complaint, Plaintiff seeks the Court's permission to amend the complaint to include the information above.

## Conclusion

Plaintiff therefore respectfully requests that the County Defendants' Motion to Dismiss be denied in all respects.

Dated: Hempstead, New York
August 1, 2024

Respectfully submitted,

BRILL LEGAL GROUP, P.C.

_____
By: Peter E. Brill
*Attorneys for Plaintiff Joseph Saetta*
64 Hilton Avenue
Hempstead, NY 11550
(516) 206-2002

To:  All Counsel
     Via Email and U.S. Mail