UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
JOSEPH SAETTA,
                            Plaintiff,
        -against-
TERRANCE RAYNOR, Acting
Commissioner-Sheriff, GEORGE
LATIMER, Westchester County Executive,
the WESTCHESTER COUNTY
DEPARTMENT OF PUBLIC SAFETY,
WESTCHESTER COUNTY, and CORINNE
PASCARIU-COSTO
                            Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/2025

24-cv-1785 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Joseph Saetta ("Plaintiff") initiated this action on March 8, 2024, alleging deprivation of rights under 42 U.S.C. § 1983 ("Section 1983") claiming violations of the First Amendment, as well as state law claims for violations of New York Civil Service Law 75-B, defamation, defamation *per se*, and interference with business relations against Terrance Raynor ("Raynor"), George Latimer ("Latimer"), the Westchester County Department of Public Safety (the "Department"), Westchester County ("Westchester"), and Corinne Pascariu-Costo ("Pascariu-Costo") (together, "Defendants").

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

The following facts are derived from the Complaint and are taken as true and construed in the light most favorable to the Plaintiff at this stage.

1

Plaintiff is a dedicated law enforcement officer, having worked for the Tuxedo Park Village Police Department, the Fishkill Town Police Department, the Mount Vernon City Police Department, the Pleasantville Village Police Department, and, most recently, the Westchester County Police Department. (Compl. ¶ 9.) On October 30, 2023, Plaintiff was appointed to the position with the Westchester County Police Department in a probationary capacity. (*Id*. ¶ 11.) Plaintiff was assigned to work with Field Training Officer ("FTO") Mohammad Chandoo given his initial probationary status. (*Id*. ¶ 13.)

On December 6, 2023, Plaintiff and Chandoo effectuated a traffic stop of motorist Pascariu-Costo. (*Id*. ¶ 16.) Pascariu-Costo failed to produce a driver's license, at which point she took out her wallet which contained a small police shield and a PBA card, which is a card issued by a police union to identify friends, family members or other individuals shown favor by police union members. (*Id*. ¶ 17.) Plaintiff nonetheless issued a ticket against Pascariu-Costo for a single minor traffic infraction. (*Id*. ¶ 19.)

Thereafter, Pascariu-Costo called the desk officer at Plaintiff's command and filed a complaint against Plaintiff. (*Id*. ¶ 20.) At no other point in time was there another incident wherein it was alleged that Plaintiff lacked integrity, was dishonest or unprofessional. (*Id*. ¶ 21.) Plaintiff asserts he otherwise experienced not a single negative incident. (*Id*.) On December 9, 2023, Chandoo informed Plaintiff that Pascariu-Costo's complaint was escalated to the Department's upper management, noting that other officers had been disciplined for "writing over" PBA cards, meaning issuing tickets to motorists who provide them. (*Id*.)

On December 19, 2023, Plaintiff was called into Captain Greer's office and was told that Commissioner Raynor was reviewing Pascariu-Costo's complaint and was deciding whether Plaintiff would fail his probation as a consequence. (*Id*. ¶ 24.) Then, on January 12, 2024, Plaintiff

2

was called into Captain Greer's office with Sergeant McNulty from International Affairs and was told that he was terminated from his position. (*Id.* ¶ 27.) Plaintiff spoke with the union President and attorney, who both confirmed that Plaintiff was being terminated for "writing over" a PBA card. (*Id.* ¶ 29.)

Plaintiff alleges that from December 6, 2023, to January 12, 2024, he had "many conversations" with different people about the "public policy issues" surrounding police discretion and PBA cards, as well as the "absurdity" of the policy that no PBA cards should be written over. (*Id.* ¶ 31.) Plaintiff states he engaged in "protected activity and speech" by complaining about the Department's policy to never write over a PBA card. (*Id.* ¶ 35.) As a result, Plaintiff avers that he was subjected to "adverse actions." (*Id.* ¶ 40.)

Based on foregoing, Plaintiff brings Section 1983 claims alleging violations of the First Amendment, as well as state law claims for violations of New York Civil Service Law 75-B, defamation, defamation *per se*, and interference with business relations.

## PROCEDURAL HISTORY

On March 8, 2024, Plaintiff commenced this action against Defendants in his Complaint. (ECF No. 1.) On September 5, 2024, Defendants filed a motion to dismiss and their memorandum of law in support (the "Motion" or "Mot."). (ECF Nos. 26 and 28.) Plaintiff filed his opposition to Defendants' motion to dismiss ("Opp."). (ECF No. 32.) Defendants filed their reply in further support of their motion ("Reply"). (ECF No. 29.)

## LEGAL STANDARD

A. **Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Section 1983

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see *Patterson v. County of Oneida*, 375 F.3d 206, 225

(2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.")

## DISCUSSION

Plaintiff brings claims pursuant to Section 1983, alleging First Amendment violations and as well as state law claims for violations of New York Civil Service Law 75-B, defamation, defamation *per se*, and interference with business relations. The Court addresses them in turn.

### A. First Amendment Retaliation Claims

In order to prosecute a First Amendment Retaliation claim, a "'successful plaintiff' must demonstrate not only that he or she spoke as a citizen, but also 'that the speech was on a matter of public concern.'" *Raymond v. City of New York*, 317 F. Supp. 3d 746, 772-73 (S.D.N.Y. 2018) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L.Ed.2d 689 (2006)). To satisfy the causal connection requirement, the allegation "'. . . must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech.'" *Id*. (quoting *Stajic v. City of N.Y.*, 214 F. Supp. 3d 230, 235

(S.DN.Y. 2016)). Importantly, Plaintiffs "may not rely on conclusory assertions of retaliatory motive to satisfy the causal link." *Cobb v. Pozzi*, 363 F. 3d 89, 108 (2d Cir. 2004).

An individual does not speak as a citizen when the individual makes statements pursuant to his official duties. *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 205 (2d Cir. 2010). "Whether speech is on a matter of public concern . . . is to be answered by the court after examining the 'content, form, and context of a given statement, as revealed by the whole record.'" *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011) (internal citations omitted). The speech must "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers,* 461 U.S. 138, 148 (1983).

Plaintiff avers that he "had many conversations with members [of the Department], members of the PBA, public officials, the public, family, friends, and acquaintances" about police discretion and PBA cards. (Compl. ¶ 31.) This is the only factual averment indicating that Plaintiff engaged in some form of speech. As currently written, the Court is not able to ascertain whether Plaintiff engaged in speech as a private citizen or as a public employee. Notably, the Complaint does not allege to whom the Plaintiff spoke, when Plaintiff engaged in such speech and what exactly Plaintiff said. Without any specificity, Plaintiff leaves the Court unable to conclude that he has successfully plead any First Amendment claim against the Defendants.

Accordingly, Plaintiff's First Cause of Action and Second Cause of Action for alleged violations of the First Amendment are dismissed without prejudice.

**B. State Law Claims**

Because Plaintiffs' Section 1983 claims must be dismissed, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and Defendants Putnam and Carmel's state law crossclaims. *See* 28. U.S.C. § 1367(c) (a district court may decline

to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction"). Thus, Plaintiff's Third Cause of Action, Fourth Cause of Action, Fifth Cause of Action and Sixth Cause of Action are dismissed without prejudice to recommence in state court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' motion to dismiss p*ro se* Plaintiff's First Amendment claims, state law claims for violations of New York Civil Service Law 75-B, defamation, defamation *per se*, and interference with business relations without prejudice. Plaintiff is granted leave to file an Amended Complaint by May 30, 2025. Plaintiff is advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by June 23, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by July 21, 2025. If Plaintiff fails to file an Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 26.

Dated:   April 24, 2025                                                  SO ORDERED:
          White Plains, New York

                                                                          NELSON S. ROMÁN
                                                                        United States District Judge

UNITED STATES DISTRICT COURT                                    Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

                                                              **CIVIL CASE DISCOVERY PLAN**

                 Plaintiff(s),            **AND SCHEDULING ORDER**

- against -


                 Defendant(s).      _____ CV _____ (NSR)


-------------------------------------------------------------x


  This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):


1.     All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)


2.     This case [is] [is not] to be tried to a jury.


3.     Joinder of additional parties must be accomplished by _____.


4.     Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

   a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b. Depositions shall proceed concurrently.

   c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge