USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/4/2026__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSEPH SAETTA,

                                        Plaintiff,

-against-

TERRANCE RAYNOR, Acting Commissioner-Sheriff,
GEORGE LATIMER, Westchester County Executive,          24-cv-1785 (NSR)
the WESTCHESTER COUNTY DEPARTMENT OF                   OPINION & ORDER
PUBLIC SAFETY, WESTCHESTER COUNTY, and
CORINNE PASCARIU-COSTO,

                                        Defendants.

------------------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

Plaintiff Joseph Saetta ("Plaintiff") initiated this action on March 8, 2024, alleging

deprivation of rights under 42 U.S.C. § 1983 ("Section 1983") claiming violations of the First

Amendment, as well as state law claims for violations of New York Civil Service Law 75-B,

defamation, defamation *per se*, and interference with business relations against Terrance Raynor

("Raynor"), George Latimer ("Latimer"), the Westchester County Department of Public Safety

(the "Department"), Westchester County ("Westchester"), and Corinne Pascariu-Costo ("Pascariu-

Costo") (together, "Defendants").

Presently before the Court is Raynor, Latimer, the Department, and Westchester's

(collectively, the "County Defendants") motion to dismiss the First Amended Complaint ("FAC,"

ECF No. 37) pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the following reasons, the

County Defendants' Motion to Dismiss is GRANTED in its entirety.

---

[1] This Opinion addresses only the motion filed by the County Defendants. Defendant Pascariu-Costo is separately
represented and did not join in the motion; she instead answered the FAC on June 19, 2025. (ECF No. 41.)
Accordingly, nothing in this Opinion disposes of, or is intended to dispose of, the Fourth, Fifth, and Sixth Causes of

**BACKGROUND**

A.  **Factual Background**

The following facts are derived from the FAC and are taken as true and construed in the light most favorable to the Plaintiff at this stage.

Plaintiff is a law enforcement officer who has worked for the Tuxedo Park Village Police Department, the Fishkill Town Police Department, the Mount Vernon City Police Department, the Pleasantville Village Police Department, and, most recently, the Westchester County Police Department. (FAC ¶ 9.) On October 30, 2023, Plaintiff was appointed to the competitive civil service position of police officer with the Westchester County Department of Public Safety ("DPS") in a probationary capacity. (*Id*. ¶ 11.) On or about December 3, 2023, the Department assigned Plaintiff a Field Training Officer ("FTO"), Police Officer Mohammad Chandoo, to ride with Plaintiff during traffic enforcement and to evaluate him. (*Id*. ¶¶ 13, 15.) Plaintiff alleges that Chandoo was not a State-certified FTO. (*Id*. ¶ 15.)

On December 6, 2023, Plaintiff and Chandoo stopped Pascariu-Costo for driving with an expired temporary license plate. (FAC ¶ 16.) Pascariu-Costo could not produce a driver's license. Instead, she took out a wallet containing a small police shield and a "PBA card," which Plaintiff describes as a card issued by a police union to identify friends, family members, or other favored individuals. (*Id*. ¶ 17.) She identified herself as "a family member." (*Id*.) Plaintiff alleges PBA cards have no official or legal status. He further alleges that no law-enforcement rule, including any DPS rule, exempts motorists with PBA cards from traffic enforcement. (*Id*. ¶ 18.) Plaintiff issued Pascariu-Costo a ticket for one minor traffic infraction, with Chandoo's approval. (*Id*. ¶¶ 19–20.)

---

Action, which are asserted solely against Pascariu-Costo. (FAC ¶¶ 76-97.) Those claims remain pending and are not before the Court on this motion.

Shortly thereafter, Pascariu-Costo called the desk officer at Plaintiff's command and complained about him. (FAC ¶ 21.) Plaintiff alleges that, although the call was not recorded as an official civilian complaint, it was treated as one, and that the Department failed to follow the procedures set forth in its own Police Department Manual for handling civilian complaints and internal investigations. (*Id*. ¶¶ 22–29.) He asserts that no internal affairs file was opened, that he was never interviewed in accordance with Department procedure (*Id.*) On or about January 9, 2024, Chandoo was directed to complete and backdate Plaintiff's probationary evaluation reports. (*Id.* ¶¶ 26–33.) Plaintiff received a passing score of 4 on every report except the one for December 6, 2023, on which he received a 1. (*Id.* ¶ 34.)

On December 19, 2023, Plaintiff was called into Captain Greer's office and told that Commissioner Raynor was reviewing Pascariu-Costo's complaint and deciding whether Plaintiff would fail his probation as a consequence. (FAC ¶ 31.) On January 12, 2024, Plaintiff was again called into Captain Greer's office, this time with a sergeant from Internal Affairs present, and was told he was terminated and placed on administrative leave through January 31, 2024. (*Id.* ¶ 35.) Plaintiff alleges that his union president and counsel confirmed that he was being terminated for "writing over" a PBA card. (*Id.* ¶ 37.) By letter dated January 22, 2024, Raynor advised Plaintiff that his separation from service was not a "removal for cause" or a "removal during a probationary period" as those terms are defined by 9 NYCRR 6056.2, and that Plaintiff had never been the subject of a disciplinary investigation. (*Id.* ¶ 38.)

From the December 6, 2023 traffic stop through his termination and "until the present date," Plaintiff had "many conversations" concerning the public policy issues surrounding police discretion and PBA cards, as well as the "absurdity" of the Department's asserted unwritten rule that no PBA card should be "written over." (FAC ¶ 39.) He also came to believe that a separate

requirement, that probationary officers make a DWI arrest before completing field training, was an unlawful arrest quota under New York Labor Law § 215-a. (*Id.* ¶ 40.)

First, Plaintiff alleges that, between December 6, 2023 and January 12, 2024, he spoke with eight Department members—including officers, sergeants, and his FTO—about the traffic stop, the PBA card policy, Chandoo's asserted deficiencies, and the DWI arrest requirement. (FAC ¶ 42(a)–(h).) Second, from December 2023 "through January 2024, and continued thereafter," he had "many more conversations" with eleven friends, his fiancée, and seven family members— each described in nearly identical terms as covering "the traffic stop, the PBA card policy, the DWI quota, [and] the fact that other officers had been disciplined for writing over PBA cards," along with "the disparate impact the PBA card policy had on different groups of people, including racial minorities." (*Id.* ¶ 43(a)–(u).) Third, "[d]uring this December 2023 to January 2024 time period, and in the months following," he had "multiple conversations around these same topics" with six current or former colleagues and supervisors at other agencies. (*Id.* ¶ 44(a)–(f).) Fourth, and only "[a]fter he was terminated," he gave interviews to news outlets and was contacted by the offices of a member of Congress and a state senator. (*Id.* ¶ 45.)

Based on the foregoing, Plaintiff asserts two causes of action against the County Defendants under Section 1983 for First Amendment retaliation, and a third cause of action against the County Defendants under New York Civil Service Law § 75-b. (FAC ¶¶ 55-75.)

**B.  Procedural History**

On March 8, 2024, Plaintiff commenced this action against Defendants. (ECF No. 1.) On September 5, 2024, the County Defendants filed a motion to dismiss the original Complaint. (ECF Nos. 26–29.) The Court granted that motion, dismissed Plaintiff's claims without prejudice, and granted Plaintiff leave to file an amended complaint. (Former Opinion, ECF No. 36.)

On May 30, 2025, Plaintiff filed the FAC (FAC, ECF No. 37.) On November 18, 2025, the County Defendants filed the instant Motion to Dismiss the FAC, together with their supporting memorandum of law ("Dfts. Mot.") and reply memorandum of law ("Dfts. Reply"). (ECF Nos. 50, 52, 54.) Plaintiff filed his opposition ("Pltf. Opp."). (ECF No. 55.)

## LEGAL STANDARD

### A.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B.    Section 1983**

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

**DISCUSSION**

Plaintiff brings claims pursuant to Section 1983, alleging First Amendment violations, as well as a state law claim for violation of New York Civil Service Law § 75-b, against the County Defendants. (FAC ¶¶ 55-75.) The Court addresses them in turn.

##### A.    First Amendment Retaliation Claims

In order to prosecute a First Amendment retaliation claim, a "'successful plaintiff' must demonstrate not only that he or she spoke as a citizen, but also 'that the speech was on a matter of public concern.'" *Raymond v. City of New York*, 317 F. Supp. 3d 746, 772–73 (S.D.N.Y. 2018) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "If either question is answered in the negative, that is the end of the matter." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 83 (2d Cir. 2022) (internal quotation marks omitted). To satisfy the causal connection requirement, the allegation "'. . . must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech.'" *Raymond*, 317 F. Supp. 3d at 773 (quoting *Stajic v. City of N.Y.*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016)). Importantly, Plaintiffs "may not rely on conclusory assertions of retaliatory motive to satisfy the causal link." *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004).

The Court previously dismissed Plaintiff's First Amendment claims because the original Complaint's lone factual averment, that Plaintiff "had many conversations" about police discretion and PBA cards, left the Court unable "to ascertain whether Plaintiff engaged in speech as a private citizen or as a public employee," and failed to allege "to whom the Plaintiff spoke, when Plaintiff engaged in such speech and what exactly Plaintiff said." (Former Opinion at 6.) The FAC supplies names and approximate timeframes, but those additions do not cure the pleading defects. For the reasons that follow, it still does not state a plausible First Amendment retaliation claim — even accepting the FAC's new allegations as true, Plaintiff still fails to plausibly allege protected speech that caused his termination.

7

### 1.    *Plaintiff Did Not Speak as a Citizen*

A public employee does not speak as a citizen when he makes statements pursuant to his official duties. *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 205 (2d Cir. 2010). The inquiry centers on "whether the speech at issue is itself ordinarily within the scope of an employee's duties,", with an additional relevant factor of whether "a civilian analogue exists." *Montero v. City of Yonkers*, 890 F.3d 386, 397–98 (2d Cir. 2018). Speech is made "pursuant to" an employee's official duties when it is "part-and-parcel of his concerns" about his ability to "properly execute his duties." *Weintraub*, 593 F.3d at 203 (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)).

Plaintiff concedes that issuing the traffic ticket was conduct undertaken pursuant to his official duties. (Opp. at 3.) He contends instead that the protected speech consists of "the speech that followed Defendants' reaction to Plaintiff issuing the traffic summons." (*Id.*) But the FAC's own allegations undercut that characterization. The conversations described in paragraphs 42 through 44 are uniformly directed at  "the traffic stop," the asserted PBA card policy, the asserted DWI arrest quota, and the discipline Plaintiff believed other officers had received for "writing over" PBA cards.  (FAC ¶¶ 42–44.) Speech of that nature is "part-and-parcel" of Plaintiff's concerns about his own treatment as a probationary officer and the conditions of his employment. *See Weintraub*, 593 F.3d at 203 (quoting *Williams,* 480 F.3d at 694). The speech was occasioned by, and is inseparable from, the December 6, 2023 traffic stop and the disciplinary review that followed. Speech that "principally focuses on an issue that is personal in nature and generally related to the speaker's own situation," or that is "calculated to redress personal grievances," does not become citizen speech merely because the speaker also voices disagreement with a management decision. *Montero,* 890 F.3d at 399.

8

Plaintiff's argument that many of the listed conversations occurred outside his chain of command, with friends, family members, and his fiancée, does not alter the analysis. (Opp. at 5.) The relevant question is whether the speech itself is "ordinarily within the scope of an employee's duties," and the identity of the audience does not, standing alone, transform otherwise unprotected speech into the speech of a private citizen. *Lane v. Franks*, 573 U.S. 228, 240 (2014). Here, the FAC's own allegations establish that Plaintiff's knowledge of the asserted PBA card practice and the asserted DWI requirement was acquired entirely through his employment, and that his decision to speak about them arose directly out of the threatened—and then actual—termination of his probationary appointment. His speech was thus made as an employee, not as a citizen.

To the extent the FAC alleges that, "[a]fter he was terminated," Plaintiff gave interviews to news outlets and was contacted by the offices of elected officials (FAC ¶ 45), those allegations do not rescue the claim. As discussed below in connection with causation, speech that postdates the adverse employment action cannot support the inference that the speech motivated the action. *Raymond*, 317 F. Supp. 3d at 773.

### 2. *Plaintiff Did Not Speak on a Matter of Public Concern*

Even assuming Plaintiff spoke as a citizen, the FAC does not plausibly allege that his speech, viewed in context, was principally directed to a matter of public concern rather than to his own employment dispute. "Whether speech is on a matter of public concern . . . is to be answered by the court after examining the 'content, form, and context of a given statement, as revealed by the whole record.'" *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011). The speech must be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 148 (1983). Conversely, speech does not qualify when it "principally focuses on the speaker's personal issues . . . even if it also incidentally touches on a

matter of general importance." *Shara*, 46 F.4th at 85. A public employee "may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008).

. Examined under those standards, the FAC's allegations reflect speech directed primarily at Plaintiff's personal employment situation Plaintiff repeatedly characterizes his conversations as efforts "to find out what was going on with his own job through his connections." (FAC ¶ 43(a).) The conversations are described in nearly identical, formulaic terms across more than thirty individuals listed, and each is anchored to "the traffic stop," the discipline Plaintiff believed had been imposed on him and others, and Plaintiff's belief that his own termination was unwarranted. While the FAC also invokes the asserted disparate racial impact of the PBA card practice and the alleged illegality of a DWI arrest quota, those references are incidental to, and do not alter the fundamentally personal character of, speech "calculated to redress" the loss of Plaintiff's probationary appointment. *Montero,* 890 F.3d at 399. That Plaintiff's grievance may, in some attenuated sense, touch on the fair administration of traffic enforcement is not sufficient. A plaintiff "must do more than allege that the sheer nature of his . . . work was connected to the public's safety, and thus a matter of public concern." *Reynolds v. City of New York,* No. 23-76-CV, 2024 WL 1043495, at *2 (2d Cir. Mar. 11, 2024). Because the principal focus of Plaintiff's speech was his own employment situation, it does not qualify as speech on a matter of public concern.

### 3.    *Plaintiff Has Not Plausibly Alleged Causation*

The First Amendment retaliation claims fail for the independent reason that the FAC does not plausibly allege a causal connection between any protected speech and Plaintiff's termination. To establish causation, a plaintiff must plead that the protected activity was a substantial motivating factor in the adverse employment action, meaning the action "would not have been

taken absent the employee's protected speech," *Raymond*, 317 F. Supp. 3d at 773, and that the relevant decisionmaker had knowledge of the protected activity, *Weslowski v. Zugibe*, 626 Fed. App'x 20, 22 (2d Cir. 2015) (summary order). A plaintiff "may not rely on conclusory assertions of retaliatory motive to satisfy the causal link." *Cobb*, 363 F.3d at 108.

The FAC's timeline defeats the causation element.  By Plaintiff's own account, the decision to terminate his probationary appointment was communicated to him on January 12, 2024. (FAC ¶ 35.) Yet the FAC alleges that the conversations on which the retaliation claims rest occurred over an open-ended period extending from December 2023 "through January 2024," and "continued thereafter" and "until the present date." (*Id.* ¶¶ 39, 43, 44, 48.) The FAC's most concrete allegations of speech to audiences outside the Department—the news interviews and contacts with elected officials' offices—are expressly said to have occurred "[a]fter he was terminated." (*Id.* ¶ 45.) Speech that postdates an adverse employment action cannot, as a matter of logic and law, have caused it.

Stripping away the post-termination allegations, what remains are a handful of vaguely described conversations with Department personnel during the brief window before January 12, 2024.  The FAC does not identify which of the thirty-plus listed conversations preceded the termination decision, nor does it plausibly allege that Raynor, the decisionmaker, knew of any protected citizen speech before deciding to end Plaintiff's probation. He knew of Pascariu-Costo's complaint about the traffic stop. However, knowledge of the complaint about the traffic stop is not equivalent to knowledge of protected citizen speech. Accordingly, the vague and open-ended timeline set forth in the FAC does not permit the Court to draw the inference of causation that a retaliation claim requires.

11

Accordingly, Plaintiff's First and Second Causes of Action for alleged violations of the First Amendment are DISMISSED.

### B.    Municipal Liability

Plaintiff's First Amendment claims against the County Defendants also fail because the FAC does not plausibly allege municipal liability. A municipality is not subject to Section 1983 liability "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). Rather, a plaintiff must allege that an official policy or custom of the municipality caused the constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff may satisfy the policy-or-custom element by alleging, a formal policy, action by a final policymaker, or "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010). Boilerplate allegations and conclusory recitations of the existence of an unwritten policy or custom do not suffice. *Plair v. City of New York,* 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011).

The FAC predicates municipal liability on a purported "unwritten" or "de facto" policy of declining to ticket motorists who present PBA cards, and of disciplining officers who do so. (FAC ¶¶ 24, 42, 48.) The FAC, however, alleges no formal policy. To the contrary, the affidavit of Captain Greer, which Plaintiff attached to the FAC and on which he relies, states that the Department "does not have and has never had a policy, official or otherwise, of honoring PBA cards." (Greer Affidavit ¶ 11, ECF No. 37-1.) Nor does the FAC plead a practice widespread enough to constitute a custom. The FAC alleges other, non-probationary officers were "disciplined" for "writing over" PBA cards, but names none, identifies no instance, and pleads no facts suggesting any such practice was so pervasive that a policymaker must have known of it.

(FAC ¶¶ 25, 43.) Plaintiff's allegation that Raynor was the final policymaker with authority over the issuance of summonses fares no better — it is conclusory assertion unaccompanied by any well-pleaded supporting facts. None of this states a plausible *Monell* claim.

In any event, "[s]uch a claim cannot lie in the absence of an underlying constitutional violation." *Gardner v. Koeningsman,* No. 21-CV-10185 (PMH), 2022 WL 1058498, at *3 (S.D.N.Y. Mar. 30, 2022). Because the FAC fails to plausibly allege an underlying First Amendment violation, the *Monell* claim fails for that reason as well.

### C.    State Law Claim

The County Defendants move to dismiss Plaintiff's Third Cause of Action under New York Civil Service Law § 75-b. They argue that Plaintiff fails to plead a protected disclosure to a governmental body and fails to plead compliance with the applicable notice-of-claim requirements. (Dfts. Mem. at 18-19.) Plaintiff does not respond to either argument. (*See generally* Pltf. Opp.)

That failure is dispositive. Where a plaintiff fails to oppose a defendant's arguments for dismissal of a claim, courts treat the claim as abandoned. *See, e.g., Farag v. XYZ Two Way Radio Serv., Inc.,* No. 22-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023). Because Plaintiff offers no response to the County Defendants' arguments for dismissal of the § 75-b claim, the Court deems the claim abandoned. Accordingly, Plaintiff's Third Cause of Action is dismissed.

### D.    Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Relevant factors include undue delay, bad faith or dilatory motive, repeated failure to

13

cure deficiencies, undue prejudice to the opposing party, and futility. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Court previously dismissed Plaintiff's First Amendment claims and identified, with specificity, the deficiencies Plaintiff was required to cure: the absence of allegations as to whether Plaintiff spoke as a citizen or as a public employee, to whom he spoke, when he spoke, and what he said. Plaintiff was granted leave to replead and, with the assistance of counsel, filed the FAC. The FAC now identifies a number of individuals with whom Plaintiff allegedly spoke but still does not plead with any meaningful specificity what he said to each. Instead, it largely relies on boilerplate descriptions, repeating the same generic list of topics for multiple individuals. That added volume does not cure the defects identified above. Nor does it cure the deficiencies in Plaintiff's Monell claim. Plaintiff has not opposed dismissal of his § 75-b claim. (*See generally* Pltf. Opp.) Under these circumstances, a further opportunity to amend the claims is not warranted. Accordingly, Plaintiff's First, Second, and Third Causes of Action are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the County Defendants' Motion to Dismiss the First Amended Complaint is GRANTED. Plaintiff's First, Second, and Third Causes of Action are DISMISSED with prejudice as against the County Defendants. This Opinion does not address Plaintiff's Fourth, Fifth, or Sixth Causes of Action against Defendant Pascariu-Costo, which remain pending. As previously directed by the Court, Plaintiff and Defendant Pascariu-Costo are directed to file a proposed Case Management Plan on or before July 2, 2026.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 50 and to terminate Defendants Terrance Raynor, George Latimer, the Westchester County Department of Public Safety, and Westchester County from this action.

Dated: June 4, 2026
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

15